IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID W. W. ADAMI, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-2187 |
| | : | |
| COUNTY OF BUCKS, et al | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                                       **October 1, 2020**

Plaintiffs David Adami and Heather Giglio bring this civil rights action on behalf of Frederick Adami against, inter alia, Defendants Brian Kircher, Patrick Rooney, Steven Columbia, C/O Knoneborg, Langston Mason, Timothy Ricci, and David Gresko (collectively, the Officers)—seven individual corrections officers at Bucks County Correctional Facility (BCCF). Plaintiffs claim the Officers violated Adami's Fourteenth Amendment rights by acting with deliberate indifference to his serious medical needs while he was being held at BCCF, which resulted in his death due to opiate withdrawal. The Officers have moved to dismiss Plaintiffs' claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting they are entitled to qualified immunity. The Court will grant the motion in part and dismiss Plaintiffs' claims against Officers Knoneborg, Mason, Ricci, and Gresko, without prejudice and with leave to amend. The Court will deny the motion with respect to Plaintiffs' claim against Officers Kircher, Rooney, and Columbia.

**BACKGROUND**[1]

On the morning of January 27, 2018, Adami was arrested for possession of drug paraphernalia after being found asleep in his car. After he was processed by police, he was taken to BCCF around 6:00 a.m. because of an outstanding bench warrant. Adami was "booked" in at BCCF at 7:28 a.m.

At 10:35 a.m., Nurse Dunfee at BCCF conducted a screening of Adami, during which Adami informed Nurse Dunfee he had an opioid addiction and he used twenty bags of heroin per day. He further informed Nurse Dunfee he used multiple bags of heroin the day before, and he was presently experiencing chills and vomiting. Nurse Dunfee noted Adami was experiencing heroin withdrawal. Adami was brought to his cell in Module A at 12:36 p.m. At that time, he was placed on an "Inmate Monitor List," indicating he was on watch for medical reasons. The Inmate Monitor List required Adami be observed and evaluated every 15 minutes. As part of that requirement, BCCF policy employed inmate monitors, referred to as "babysitters," to check on inmates every fifteen minutes. In addition, BCCF policy required corrections officers to observe and evaluate an inmate on the Inmate Monitor List at least every 30 minutes.

Throughout his time in Module A, Adami was exhibiting symptoms of severe opiate withdrawal, including frequent vomiting. Officer Ricci was assigned to Module A from Adami's arrival at 12:36 p.m. until 2:00 p.m. At 1:46 p.m., Nurse Dunfee entered orders for four medications—Bentyl, Bismuth, Ondansetron, and Vistaril—for Adami, entered under prescriber Dr. Gessner. Neither Nurse Dunfee nor Dr. Gessner examined Adami at that time.

---

[1] In evaluating a motion to dismiss, the court must "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation omitted).

Officers Rooney and Kircher relieved Officer Ricci at around 2:00 p.m., and were responsible for Module A until 10:00 p.m. Adami remained in his cell from 2:45 p.m. until his death the following morning. At 7:01 p.m., Nurse Wright administered the four medications prescribed to Adami, three of which were provided orally. Nurse Trusty recorded vital signs for Adami at 7:53 p.m., which included a blood pressure of 128/100 while standing and 130/96 while sitting. No other record of Adami's condition was recorded at that time. This was the final time any medical personnel at BCCF saw Adami. During Officers Rooney and Kircher's shift, Adami's cellmate attempted to tell Officers Rooney and Kircher about Adami's condition, but they "blew [him] off."[2] Compl. ¶ 76.

Officer Columbia relieved Officers Rooney and Kircher around 10:00 p.m., taking over responsibility for Module A until 6:00 a.m. the following morning. When Officer Columbia went on break, Officer Knoneborg was responsible for Module A. During Officer Columbia's shift, Adami's condition continued to worsen. Adami defecated and urinated on himself, and he continued vomiting throughout the night. Adami complained of severe withdrawal symptoms and that no medications had helped him.[3] Despite this, none of the guards on duty that night, including Officer Columbia, noted having any conversations with Adami. Further, Officer Columbia did not observe Adami at least every 30 minutes as required by BCCF policy for inmates on the Inmate Monitor List. At 3:10 a.m., Officer Mason arrived at Module A for unannounced rounds, though

---

[2] Given the chronological nature of Plaintiffs' Complaint, the Court infers Plaintiffs' allegation that Adami's cellmate "attempted to tell the . . . guards on Housing Module A about [Adami's] condition, but they 'blew him off,'" refers to Officers Rooney and Kircher, the only officers identified as being responsible for Module A during this time. *See* Compl. ¶¶ 71, 76.

[3] As with Officers Rooney and Kircher, the Court infers this refers to Officer Columbia, the only officer identified as being responsible for Module A during this time. Compl. ¶¶ 78, 80.

he only spoke to the guards at the desk and did not observe Adami. At no point overnight did any of the Officers communicate with medical personnel regarding Adami's complaints or condition.

At 6:00 a.m., Officers Ricci and Gresko relieved Officer Columbia and assumed responsibility for Module A. At 6:35 a.m., Officer Ricci noticed Adami was lying in his cell with his eyes open. Officer Ricci entered the cell, and an emergency was called. Additional guards and medical staff arrived and began performing CPR on Adami. Adami was transported to Doylestown Hospital, where he was declared dead at 7:35 a.m. Adami's cause of death was determined to be "Sudden Death due to Opiate Withdrawal." Compl. ¶ 94. Adami's death marked the third inmate death due to heroin withdrawal at BCCF in the last four years.

Plaintiffs filed this case on May 20, 2019, asserting, inter alia, a claim under 42 U.S.C. § 1983 against the Officers for violating Adami's Fourteenth Amendment right by acting with deliberate indifference to his serious medical needs (Count I). The Officers filed the instant motion to dismiss on July 9, 2019, asserting a qualified immunity defense. The Court heard argument on the motion on September 25, 2019.

**DISCUSSION**

The Court will deny the motion with respect to Officers Kircher, Rooney, and Columbia because Plaintiffs have pleaded facts that would support a claim of deliberate indifference, and the Officers are not entitled to immunity at this stage. The Court will grant the motion with respect to Officers Knoneborg, Mason, Ricci, and Gresko because Plaintiffs have not sufficiently pleaded they acted with deliberate indifference to Adami's serious medical need. However, the Court will grant Plaintiffs' leave to file an Amended Complaint because the deficiencies within Plaintiffs' Complaint are factual and Plaintiffs have not previously had the opportunity to amend their Complaint.

4

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678).

The Officers assert Plaintiffs' Fourteenth Amendment claim should be dismissed because they are entitled to qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Immunity questions should be resolved "at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (quotations and citation omitted). However, because qualified immunity is an affirmative defense, it will only attach on at the motion to dismiss stage "when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). At the motion to dismiss stage, courts "look only to the complaint to see whether there is any set of facts plaintiff can prove that would support a denial of immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (citation omitted).

In evaluating whether qualified immunity attaches, courts employ a two-pronged analysis: (1) "whether the facts that [the] plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's

5

alleged misconduct." *Pearson*, 555 U.S. at 232. For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.* Creighton, 483 U.S. 635, 640 (1987). A court must assess qualified immunity "in the context of each individual defendant's specific conduct." *Griffin-El v. Beard*, 411 F. App'x 517, 519 (3d Cir. 2011).

Plaintiffs have sufficiently pleaded that Officers Kircher, Rooney, and Columbia violated Adami's Fourteenth Amendment right to adequate medical care under § 1983 and his right to adequate medical care was clearly established at the time of the misconduct. Conversely, Plaintiffs have not sufficiently pleaded Officers Knoneborg, Mason, Ricci, and Gresko violated Adami's Fourteenth Amendment right to adequate medical care under § 1983 and Count I will therefore be dismissed against these Defendants. The Court first turns to Officers Kircher, Rooney, and Columbia.

First, Plaintiffs have sufficiently pleaded that Officers Kircher, Rooney, and Columbia violated Adami's Fourteenth Amendment right to medical care under § 1983. Section 1983 "provides a cause of action against 'every person who,' under color of state law, 'subjects, or causes to be subjected,' another person to a deprivation of a federally protected right." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (quoting 42 U.S.C. § 1983), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015). To maintain a cause of action under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A prisoner's right to adequate medical care arises under the Eighth Amendment, which prohibits cruel and unusual punishment. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)

6

(citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Due Process Clause of the Fourteenth Amendment secures the same right to adequate medical care for pretrial detainees as the Eighth Amendment provides for convicted prisoners. *See Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d Cir. 1988). "[P]rison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-5 (1976)). To sustain a deliberate indifference claim under § 1983, "a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs and (2) an objective showing that those needs were serious." *Id.* (quotations and citation omitted) (alteration in original). The same standard applies to a deliberate indifference claim brought by a pretrial detainee under the Fourteenth Amendment.[4] *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003).

The Officers concede Adami's medical needs were serious. Hr'g Tr. 9:10-13, Sept. 25, 2019, ECF No. 44. The Officers' motion therefore turns on whether Plaintiffs have sufficiently pleaded the Officers were deliberately indifferent to Adami's medical needs, and whether the right at issue was clearly established. Prison officials can be deliberately indifferent when they (1) deny reasonable requests for medical treatment, (2) refuse to provide medical care when they know it's needed, (3) delay medical treatment for non-medical reasons, or (4) prevent an inmate from receiving recommended treatment for serious medical needs. *Pearson*, 850 F.3d at 538. However,

---

[4] Plaintiffs plead violations of both the Eighth and Fourteenth Amendments. Because Adami was a pretrial detainee at all relevant times, the § 1983 claim is properly based on the Due Process Clause of the Fourteenth Amendment, which is evaluated under "the same standard used to evaluate similar claims brought under the Eighth Amendment." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003).

non-medical prison officials cannot be deliberately indifferent "when the prisoner is under the care of medical experts and the official does not have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Pearson*, 850 F.3d at 543 (quotations, and citations omitted). Relatedly, non-medical prison officials cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

Plaintiffs have sufficiently pleaded Officers Kircher, Rooney, and Columbia acted with deliberate indifference. Plaintiffs allege Officers Kircher, Rooney, and Columbia were all obligated to observe Adami every 30 minutes because Adami was on the Inmate Monitor List for heroin withdrawal. Compl. ¶ 67. Throughout his time at Module A, Adami was exhibiting symptoms of opiate withdrawal, such as frequent vomiting. *Id.* ¶ 68. During Officers Rooney and Kircher's shift, Plaintiffs allege Adami's cellmate notified the officers about Adami's worsening condition, but they ignored him. *Id.* ¶ 76. During Officer Columbia's shift, Plaintiffs allege Adami himself complained that his withdrawal symptoms were getting worse and his medications were not working, but he was ignored. *Id.* ¶ 80. By that time, Adami had defecated and urinated on himself, and continued vomiting throughout the night. *Id.* ¶ 79. Moreover, Plaintiffs allege Officer Columbia failed to observe Adami every 30 minutes, which was explicitly required by BCCF policy for an inmate on medical watch. *Id.* ¶ 83. Taken together, Plaintiffs have alleged sufficient facts to state a plausible claim that Officers Kircher, Rooney, and Columbia were deliberately indifferent to Adami's serious medical needs. *See Koukos v. Chester Cnty.*, No. 16-4602, 2017 WL 511634, at *6 (E.D. Pa. Feb. 7, 2017) (holding plaintiff's allegations that officers did not act

after observing him sweating and shaking and after he requested to be taken to the infirmary to be treated for opiate withdrawal were sufficient to survive a motion to dismiss).

Relying on the Third Circuit's decision in *Pearson v. Prison Health Services*, the Officers argue Adami "was under continuing medical care from the morning that he arrived at the BCCF," and "[t]here is nothing in the Complaint to plausibly suggest that any of [the Officers] had a reason to believe that medical personnel were mistreating or not treating Adami." Mot. to Dismiss 6-7, ECF No. 13. This argument falls short for two reasons. First, accepting all facts in the Complaint as true, Adami was by no means "under continuing medical care." Rather, he had three isolated interactions with three different nurses: when he first arrived at BCCF (and prior to him ever entering Module A); when Nurse Wright administered his medication at 7:01 p.m.; and when Nurse Trusty checked his vitals at 7:53 p.m. Compl. ¶¶ 46, 73, 74. Throughout his time at BCCF, Adami remained housed with the general prison population, under the Officers' supervision. *Id.* ¶ 72. Second, Adami and his cellmate's complaints to Module A officers during the shifts of Officers Kircher, Rooney, and Columbia regarding Adami's worsening condition allegedly occurred after Adami's final interaction with the nurses, when he clearly was not receiving any additional care or treatment. *Id.* ¶¶ 76, 80.

Given the facts alleged, the Officers were never put in a position where they had to second-guess treatment decisions by medical personnel. Rather, the inmate whom they were obligated to monitor every 30 minutes out of concerns for his health exhibited increasingly deleterious symptoms, directly complained of those worsening symptoms, and the Officers made no effort to notify medical personnel. These facts are sufficient to state a plausible claim that Officers Kircher, Rooney, and Columbia acted with deliberate indifference by denying Adami's reasonable requests for medical treatment and refusing to alert medical personnel. *See Gravley v. Tretinik*, 414 F.

App'x 391, 394 (3d Cir. 2011) (deliberate indifference claim was cognizable where plaintiff alleged he was not being treated for ongoing pain associated with asthma and officer failed to take any action). Whether the officers in fact had sufficient knowledge to render them deliberately indifferent "is a determination that should be made when the record is more complete" with respect to what the officers knew about Adami's condition, what they observed, what specifically Adami and his cellmate said to which officer, and what the officers understood regarding Adami's treatment. *Koukos*, 2017 WL 511634, at *6. Accordingly, the Court finds Plaintiffs have sufficiently pleaded a Fourteenth Amendment right to adequate medical care claim under § 1983 against Officers Kircher, Rooney, and Columbia and, therefore, plead a violation of his constitutional rights sufficient to satisfy the first prong of the qualified immunity analysis.

Next, Plaintiffs have sufficiently pleaded that Adami's Fourteenth Amendment right to adequate medical care was clearly established at the time of Officers Kircher, Rooney, and Columbia's alleged misconduct. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kane v. Barger*, 902 F.3d 185, 194 (3d Cir. 2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). In determining whether a right is clearly established, "the Court must consider whether existing precedent [has] placed the statutory or constitutional question beyond debate." *Michtavi v. Scism*, 808 F.3d 203, 207 (3d Cir. 2015) (quotations and citation omitted) (alteration in original). There does not need to be a case directly on point for a right to be clearly established. *Kane*, 902 F.3d at 194. Rather, the right must have "'a sufficiently clear foundation in then-existing precedent.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)).

The Officers define the right at issue as whether "correctional officers could be held liable for failing to treat and monitor an inmate receiving medical care for withdrawal symptoms, absent

a reason to believe that the inmate was in distress." Mot. to Dismiss 12, ECF No. 13. Setting aside that Plaintiffs have pleaded Officers Kircher, Rooney, and Columbia had reason to believe Adami was in distress, the Officers' definition is far too narrow. In defining the right, "it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017) (quotations and citation omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."). The appropriate question is whether Adami had a clearly established right to adequate medical treatment for his withdrawal symptoms—a serious medical need.

An inmate's right to treatment for serious medical needs is beyond question. *Estelle*, 429 U.S. at 104. Third Circuit case law establishes that prison officials violate that right when they deny reasonable requests for treatment. *See, e.g.*, *Pearson*, 850 F.3d at 534 ("[P]rison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs. . ."); *Atkinson v. Taylor*, 316 F.3d 257, 266 (citing *Estelle* as having clearly established that prison officials cannot be deliberately indifferent to a prisoner's existing serious medical needs). Therefore, Adami's Fourteenth Amendment right to adequate medical treatment was clearly established at the time of Officers Kircher, Rooney, and Columbia's alleged misconduct.

Having found Plaintiffs sufficiently pleaded that Officers Kircher, Rooney, and Columbia violated Adami's Fourteenth Amendment right to adequate medical care under § 1983 and his right to adequate medical care was clearly established at the time of the misconduct, the Court finds Officers Kircher, Rooney, and Columbia are not entitled to qualified immunity on the face

of the Complaint. *See Leveto*, 258 F.3d at 161. The Officer's motion will be denied as to these Defendants.[5]

Turning to Officers Knoneborg, Mason, Ricci, and Gresko, Plaintiffs have not sufficiently pleaded these Defendants violated Adami's Fourteenth Amendment right to adequate medical care under § 1983 and Count I will therefore be dismissed against them. Like Officers Kircher, Rooney, and Columbia, the issue here turns on whether the Complaint adequately pleads that Officers Knoneborg, Mason, Ricci, and Gresko engaged in deliberate indifference. The Court finds it does not.

First, Plaintiffs identify Officer Knoneborg as the officer who "took over responsibility for Housing Module A[] when [Officer] Columbia went on break." Compl. ¶ 78. This is the first and only time Plaintiffs reference any specific conduct by Officer Knoneborg. While Plaintiffs allege Officer Columbia did not observe Adami every thirty minutes as required by BCCF policy, they do not include Officer Knoneborg in the allegation. *Id.* ¶ 83. Plaintiffs next allege Officer Mason arrived at Module A at 3:10 a.m. for "unannounced rounds." *Id.* ¶ 85. However, according to Plaintiffs, Officer Mason "did not do any rounding of Module A," and instead spoke only to the guards at the desk. *Id.* As pleaded, Officers Knoneborg and Mason entered Module A for one-off, isolated purposes, and did not interact with or observe Adami. Absent allegations that Officers Knoneborg and Mason were ever made aware of Adami's serious medical need, let alone required to observe Module A inmates on the Inmate Monitor List, the claims against them must be dismissed. *See Ward v. Lamanna*, 334 F. App'x 487, 491 (3d Cir. 2009) ("[Prison] staff must '. . .

---

[5] Despite filing an Answer to the Complaint, Defendant Bucks County argues, if the Officers are dismissed from the case, Plaintiffs' *Monell* claim against Bucks County should also be dismissed. Reply in Supp. 1, ECF No. 17. Because the Court will not dismiss all Officers from the case, the Court does not reach this question.

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists . . . .'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1993)).

Finally, Plaintiffs have not alleged any facts which, taken as true, would plausibly show deliberate indifference on the part of Officers Gresko and Ricci. Plaintiffs allege Officers Gresko and Ricci began their shift at 6:00 a.m. Compl. ¶ 90. According to Plaintiffs, Officer Ricci then found Adami lying on his bed with his eyes open at 6:35 a.m., and medical staff was in Adami's cell two minutes later. *Id.* at 91-92. Plaintiffs make no further allegations regarding Officers Ricci and Gresko's 6:00 a.m. shift, and there is nothing in the Complaint to suggest that either Officers Ricci or Gresko otherwise interacted with Adami. At most, Plaintiffs have pleaded Officers Ricci and Gresko were five minutes late in observing an inmate on the Inmate Monitor List, which the Court finds does not rise to deliberate indifference. Officer Ricci was also the officer responsible for Module A when Adami first arrived. However, like with Officer Ricci's shift with Officer Gresko, Plaintiffs do not allege either Adami or his cellmate complained to Officer Ricci during his first shift, nor do Plaintiffs allege Officer Ricci failed to observe Adami as required by BCCF policy. In fact, Plaintiffs make no allegation at all with respect to Officer Ricci's actions during his first shift. Accordingly, the § 1983 claims against Officers Knoneborg, Mason, Ricci, and Gresko will be dismissed. *See Griffin-El*, 411 F. App'x at 519 ("[W]here . . . a claim is asserted against numerous officials who interacted with the plaintiff in different ways and at different times, [the district court must] analyze separately the conduct of each Defendant against the constitutional right allegedly violated.") (internal quotations and citation omitted).

Having found the § 1983 claims against Officers Knoneborg, Mason, Ricci, and Gresko fail as pleaded in the Complaint, the Court must consider whether to grant Plaintiffs leave to file an amended complaint. A court may grant leave to amend a pleading under Federal Rule of Civil

Procedure 15(a)(2). Rule 15(a)(2) instructs a court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court can deny leave to amend, however, when the amendment would be futile. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). An amendment is futile when it "could not withstand a renewed motion to dismiss." *Id.* (internal quotations omitted). Because the deficiencies within Plaintiffs' Complaint are factual and Plaintiffs have not previously had the opportunity to amend their Complaint, the Court grants Plaintiffs leave to file an amended complaint addressing the deficiencies identified in this Memorandum.

**CONCLUSION**

In conclusion, because Plaintiffs have not sufficiently pleaded deliberate indifference with respect to Officers Ricci, Knoneborg, Mason, and Gresko, the Court will dismiss Count I as to these Defendants, without prejudice and with leave to amend. Defendants' motion to dismiss, however, will be denied with respect to Officers Kircher, Rooney, and Columbia because Plaintiffs have sufficiently pleaded their deliberate indifference claim against them and they are not entitled to qualified immunity at this stage.

An appropriate order was previously issued on September 30, 2020.

BY THE COURT:


  /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.
